IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE PMC MARKETING, CORP.,
DEBTOR.

VAQUERIA TRES MONJITAS, INC.,

Appellant,

v.

NOREEN WISCOVITCH-RENTAS
(CHAPTER 7 TRUSTEE),

Appellee.

**Civil No. 14-1125 (SEC)**

**OPINION AND ORDER**

This appeal arises from Chapter 7 bankruptcy proceedings initiated against PMC Marketing, Corp. (PMC), which did business in Puerto Rico as the now-defunct "Farmacias El Amal." Appellant Vaquería Tres Monjitas Inc. (Tres Monjitas) seeks review of the bankruptcy court's decision that it failed to shoulder its burden of demonstrating that certain "preferential" payments were not exempt from avoidance under the ordinary-course-of-business exception, 11 U.S.C. § 547(c)(2). Finding no reversible error, the Court **AFFIRMS**.

**Factual and Procedural Background**

The underlying facts, all agree, Docket # 8, p. 5; Docket # 9, p. 3, are undisputed. PMC issued five checks to Tres Monjitas, its milk and fruit beverages supplier, within 90 days before being propelled into bankruptcy by its creditors. (The bankruptcy petition was filed on March 18, 2009, and the payments were cashed between December 29, 2008 and March 13, 2009.) The checks, which totaled $40,766.85, cleared; and PMC's debts to Tres Monjitas were thus satisfied. Noreen Wiscovitch-Rentas (Wiscovitch), as debtor in possession, brought an adversary proceeding against Tres Monjitas to recover under 11 U.S.C. § 547(b) the five payments as voidable preferences.

In due season, Wiscovitch moved for summary judgment, see Fed. R. Civ. P. 56, contending that the five checks were "preferences" under § 547(b). Tres Monjitas' response

**Civil No. 14-1125 (SEC)** Page 2

conceded that the payments were preferential transfers, but argued that they were protected from avoidance under the contemporaneous-exchange-for-new-value and ordinary course-of-business exceptions, 11 U.S.C. § 547(c)(1) and (2).

Finding both defenses unavailing, the bankruptcy court granted Wiscovitch's summary-judgment motion, and entered judgment in her favor. See In re PMC Mktg. Corp., No. 09-02048, 2013 WL 6799041 (Bankr. D.P.R. Dec. 20, 2013). Pertinently, the court first held that Tres Monjitas had waived its ordinary-course-of-business defense, because it never provided any "copies of the invoices to determine whether such payments were made in accordance with the terms of the invoice." Id. at *2. But "[e]ven if such defense is not waived," the court held, "the table [Tres Monjitas] provided did not establish a set pattern of payments or transactions that could be considered as ordinary course of business," id., because Tres Monjitas had offered no evidence to "demonstrate any sort of patterns, except the fact that these payments were indeed paid to and deposited by [Tres Monjitas]." Id. at *6.

This appeal ensued. In this venue, Tres Monjitas challenges only the bankruptcy court's refusal to apply the ordinary-course-of-business defense. Docket # 5, pp. 3-4. This means, of course, that the appellant waived its defense of "contemporaneous exchange for new value." Tres Monjitas also waived any argument against the bankruptcy court's core ruling that the relevant payments satisfied all of § 547(b)'s requirement and were thus preferential transfers. See generally Wood v. Milyard, 132 S. Ct. 1826, 1835 (2012) (discussing waiver rule).

**Standard of Review**

A district court may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings. Fed. R. Bkrtcy. P. 8013. Where, as here, "Federal Rule of Civil Procedure 56, applicable in bankruptcy through Bankruptcy Rule 7056, was the procedural vessel that gave rise to this appeal," the appellate inquiry zeroes in on whether "the moving party is entitled to judgment as a matter of law." In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 274 (1st Cir. 2014) (citing Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir.2010)). That normally engenders plenary review, Berkshire Bank v. Town of Ludlow, Mass., 708 F.3d 249, 252 (1st Cir. 2013), as opposed to clear-error review, which bars appellate

**Civil No. 14-1125 (SEC)**                                                                 Page 3

courts from "upset[ting] findings of fact or conclusions drawn therefrom unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made." Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st Cir.1990).

But there is a "procedural crawl." Lund v. City of Fall River, MA, 714 F.3d 65, 69 (1st Cir. 2013) (Souter, J.). The parties neither made a jury demand nor conducted any discovery; instead, they requested that the case be "adjudicated on the record," App. at 65 (i.e., the documents they attached to the pleadings). And neither party disputed that record below; nor do they dispute it here. Docket # 8, p. 5; Docket # 9, p. 3. Without serious question, then, the parties "considered the matter to have been submitted below as a case ready for decision on the merits." Federación De Empleados Del Tribunal Gen. De Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984) (Breyer, J.). "[W]here '[t]here are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses'—the district court is freed from the usual constraints that attend the adjudication of summary judgment motions." E.E.O.C. v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir. 1995) (second alteration in original) (quoting Federación De Empleados,747 F.2d at 36). Under these peculiar circumstances, the standard of appellate review of factual findings (but not of legal conclusions) shifts from de novo to clear error, and the Court will thus overturn the bankruptcy court's "factual inferences only if they are 'clearly erroneous.'" Id.[1] This course of action makes perfect sense here, because the "bankruptcy court's assessment in connection with whether [the ordinary-course-of-business defense applies]

---

[1]Unfortunately, the parties' briefs omitted the appellate standard of review, as required by Federal Rule of Bankruptcy Procedure 8014(a)(5) and (b)(2).The Court hastens to add that Wiscovitch unnecessarily complicated the proceedings below by submitting a summary-judgment motion, rather than "[s]ubmitt[ing] this case to the [bankruptcy] court as a case stated." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997); see Fed. R. Civ. P. 52(a)(1). And although the bankruptcy court bit the bullet and used the summary-judgment mechanism, the parties have the lion's share of the blame for creating this procedural blunder. At any rate, and for the reasons stated above, the Court will apply the "preponderance of the evidence" (post-trial) standard, cf. In re Affiliated Foods Sw. Inc., 750 F.3d 714, 719 (8th Cir. 2014), just as the bankruptcy court confusingly did in its summary-judgment ruling. 2013 WL 6799041, at *6 ("[Tres Monjitas] simply needs to demonstrate by a preponderance of the evidence that the specific transaction was ordinary as between the parties.").

**Civil No. 14-1125 (SEC)**                                                                 Page 4

. . . is a horse of different hue; the findings which collectively comprise such an assessment are factbound and thus engender clear-error review. In re Healthco Int'l, Inc., 132 F.3d 104, 107-08 (1st Cir. 1997).

### Applicable Law and Analysis

When (as here), within 90 days before declaring bankruptcy, the debtor (PMC) pays an unsecured creditor like Tres Monjitas, that payment is "preferential," meaning that the trustee (Wiscovitch) can recover it, "and thus make the creditor take pot luck with the rest of the debtor's unsecured creditors." Matter of Tolona Pizza Products Corp., 3 F.3d 1029, 1031 (7th Cir. 1993) (Posner, J.) (citing 11 U.S.C. § 547); see also, e.g., In re Healthco Int'l, Inc., 132 F.3d at 109 (noting § 547 that seeks "to guard against favoritism in the face of looming insolvency"). As said, Tres Monjitas conceded below, and the bankruptcy court so held, that the five payments made during the preference period, having satisfied § 547(b)'s requirements, were preferential transfers. See 2013 WL 6799041, *4.

But if Tres Monjitas, the transferee, can prove the ordinary-course-of-business exception, one of the defenses listed in 11 U.S.C. § 547(c), it can forestall Wiscovitch's recovery. Barring this exception, the Supreme Court has remarked, "trade creditors and other suppliers of necessary goods and services might have been reluctant to extend even short-term credit and might have required advance payment instead, thus making it difficult for many companies in temporary distress to have remained in business." Union Bank v. Wolas, 502 U.S. 151, 158-59 (1991). To succeed, however, Tres Monjitas bears the burden, 11 U.S.C. § 547(g), of proving that the (1) debt was incurred in the ordinary course of business of both the debtor and the transferee, § 547(c)(2); and (2) payment or transfer was "made in the ordinary course of [their] business or financial affairs," § 547(c)(2)(A), or it was "made according to ordinary business terms," § 547(c)(2)(B); see WJM, Inc. v. Massachusetts Dep't of Pub. Welfare, 840 F.2d 996, 1010 (1st Cir. 1988).

The first element of this defense, 11 U.S.C. § 547(c)(2), is not at issue here, as neither Wiscovitch nor the bankruptcy court disputed it. So the Court assumes, without deciding, that

**Civil No. 14-1125 (SEC)**                                                                                    Page 5

the debts were incurred in the ordinary course of business of both PMC and Tres Monjitas. The critical inquiry, then, is whether Tres Monjitas has met its burden of proving either one of the remaining requirements. And as indicated above, Tres Monjitas must prove, by a preponderance of the evidence, that the payments (the five checks) were (1) "made in the ordinary course of [Tres Monjitas and PMC's] business or financial affairs," § 547(c)(2)(A), which is commonly called the subjective prong of the ordinary-course-of-business test; or (2) "made according to ordinary business terms," § 547(c)(2)(B), the so-called objective prong. See generally In re Affiliated Foods Sw. Inc., 750 F.3d 714, 718 (8th Cir. 2014) (noting that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, made "the remainder of the test . . . disjunctive").

The bankruptcy court's conclusion that Tres Monjitas failed to carry its burden of satisfying the objective prong is inexpugnable. To begin, Tres Monjitas' brief below made no distinction between the two prongs. And its appellate brief simply ignores subsection (B); in fact, its brief, Docket # 5, p. 7, even recognizes, for the first time, that the "most applicable provision to the facts of this case" is subsection (A). This comes as no surprise: Tres Monjitas marshaled zero evidence of "whether the terms between the parties were particularly unusual in the relevant industry. . . ." In re U.S.A. Inns of Eureka Springs, Arkansas, Inc., 9 F.3d 680, 685 (8th Cir. 1993); accord, e.g., In re Gulf City Seafoods, Inc., 296 F.3d 363, 368 (5th Cir. 2002) (collecting circuit caselaw on this point). No more is needed to conclude that the bankruptcy court correctly determined that Tres Monjitas had failed to meet its burden of satisfying subsection (B)'s objective prong.

Turning to the subparagraph (A)'s subjective prong, "[t]here is no precise legal test" on this front, although a well-trodden consensus dictates that "the controlling factor is whether the transactions between the debtor and the creditor both before and during the 90-day period were consistent." Collier on Bankruptcy ¶547.04[2](a)(ii) & n. 38 (16th ed.); accord, e.g., In re Healthco Int'l, Inc., 132 F.3d at 110 (noting that "the hallmark of a payment in the ordinary course is consistency with prior practice" (citing WJM, Inc., 840 F.2d at 101). And a threshold

**Civil No. 14-1125 (SEC)**                                                                                      Page 6

finding requires establishing a baseline period for comparison, e.g., In re Healthcentral.com, 504 F.3d 775, 790 (9th Cir. 2007), which should be "well before" the preference period, Tolona, 3 F.3d at 1032. "To make a sound comparison, '[n]umerous decisions support the view that the historical baseline should be based on a time frame when the debtor was financially healthy.'" In re Affiliated Foods Sw. Inc., 750 F.3d at 720 (adopting two-year period) (alteration in original; quoting In re Quebecor World (USA), Inc., 491 B.R. 379, 387 (Bankr.S.D.N.Y.2013)). In reaching that fact-intensive determination, the First Circuit has considered factors like "the amount transferred, the timing of the payment, the historic course of dealings between the debtor and the transferee, and the circumstances under which the transfer was effected." In re Healthco Int'l, Inc., 132 F.3d at 109. As particularly relevant here, late payments can be "ordinary," if the transferee can prove that such tardy payments were the standard course of dealing between it and the debtor, see, e.g., In re Globe Mfg. Corp., 567 F.3d 1291, 1298 (11th Cir. 2009)—the transferee can show, for instance, that the debtor and it "pa[id] little or no attention to the terms stated on their invoices . . . ." Tolona, 3 F.3d at 1033.

With these legal precepts in mind, the Court turns to the waiver issue. As noted above, the bankruptcy court ruled that Tres Monjitas had waived its ordinary-course-of-business defense, because it never furnished any "copies of the invoices to determine whether such payments were made in accordance with the terms of the invoice." 2013 WL 6799041, at *2. Tres Monjitas' appellate brief nowhere challenges that ruling, however.

It is a matter of bedrock principle in this circuit "that theories not raised squarely" below "cannot be surfaced for the first time on appeal." McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) (collecting cases). Yet in the bankruptcy court, Tres Monjitas' three-and-a-half-page opposition to Wiscovitch's summary-judgment motion, App. 65-68, made passing mention of subparagraph (A)—an allusion which, in its entirety, contained six short sentences and a block-quote quotation (to a secondary source); "incredibly, [it] cite[d] no caselaw at all." Rodríguez-Machado v. Shinseki, 700 F.3d 48, 49 (1st Cir. 2012) (per curiam). To cinch matters, Tres Monjitas neither analyzed subparagraph (A) nor presented any legal

authority directly supporting its application to the facts of this case—though it had the burden of proving this defense by a preponderance of the evidence. Tres Monjitas' factual proffer was just as truncated; it merely furnished the bankruptcy court with several checks and a table of payments (in Spanish), App. at 72, but then amazingly told the court to "make its own evaluation of the table,"App. 67 at 3, thereby flouting the admonition that "litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." Silverstrand Investments v. AMAG Pharmaceuticals, Inc., 707 F.3d 95, 107 (1st Cir. 2013). Worse, it neglected to apply any of the factors mentioned above, see In re Healthco Int'l, Inc., 132 F.3d at 109, nor did it bother to compute the "average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory." In re Quebecor World (USA), Inc., 491 B.R. at 386 (citation and internal quotation marks omitted). Flagging these deficiencies, the bankruptcy court noted that Tres Monjitas had not only failed to furnish any invoices—crucial evidence with which to establish the standard payment terms, see In re Accessair, Inc., 314 B.R. 386, 393 (B.A.P. 8th Cir. 2004), aff'd sub nom. In re Access Air, Inc., 163 F. App'x 445 (8th Cir. 2006), or the parties' "agreement," Kleven v. Household Bank F.S.B., 334 F.3d 638, 643 (7th Cir. 2003)—but had also fallen short of "establish[ing] a set pattern of payments or transactions that could be considered as ordinary course of business." 2013 WL 6799041, at *6.

In short, when the ordinary-course-of-business defense was presented below, "it was the merest of skeletons," McCoy, 950 F.2d at 22, devoid of any analysis whatsoever. See also, e.g., Rocafort v. IBM Corp., 334 F.3d 115, 122 (1st Cir.2003) ("Passing reference to legal phrases and case citation without developed argument is not sufficient to defeat waiver." (citing DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir.2001))). Yet ["i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990). So finding this defense waived was well within the bankruptcy court's discretion. Cf. In re Olympic Mills Corp., 477 F.3d 1, 17 (1st Cir. 2007) (finding claim waived

because "as presented to the district court . . . the argument was fatally undeveloped, comprising only four sentences, a citation to a district court opinion, and no analysis whatsoever").

On appeal, Tres Monjitas furnishes, for the first time, a new table calculating, the "average number of days between payments," Docket # 5-3, p. 1, and mounts a new argument based on those new calculations. See Docket # 5, pp. 5-6. But the appellant still ignores the average lateness computation theory. See generally, e.g., In re Quebecor World (USA), Inc., 518 B.R. 757, 763 (Bankr. S.D.N.Y. 2014) (discussing correct standard). Tres Monjitas even offers a new theory based on the Puerto Rico Commerce Code, P.R. Laws Ann. tit. 10, § 1910, et seq. And, of course, Wiscovitch calls out Tres Monjitas for bringing "new arguments, exhibits, analysis and theories . . . for the first time on appeal." Docket # 8, p. 4. The Court agrees. The upshot is that these proffers, which were never even hinted at before, are forfeited. See, e.g., United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992) ("[A] party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court.").

In any event, the bankruptcy court permissibly reached its alternative conclusion that Tres Monjitas had failed to meet its burden of establishing that the challenged transfers occurred in the ordinary course of business between it and PMC. Because Tres Monjitas furnished no calculations, however, it appears that the bankruptcy court relied on Wiscovitch's own computations (i.e., her "interpretation" of Tres Monjitas' table) of the average payment time after the issuance of the invoices during the historical and preference periods. See 2013 WL 6799041, at *7. (Given the lack of invoices or other evidence concerning the standard payment terms (e.g., affidavits), the accuracy of these figures is dubious; but because Tres Monjitas never questioned that calculus, it waived any argument against it.)  The bankruptcy court reasoned:

> [PMC] made 31 payments in the 15 months prior to the filing of the petition. In some months, [PMC] made up to four payments (January of 2008), and in others no payments at all (April of 2008). . . . [T]he payments prior to the preference period were late, between 48 and 123 days. During the preference period, the payments were between 122 and 148 days late. This shows that during the

> preference period, [PMC] was paying much later than prior to the preference period. The average "lateness" of the payments prior to the preference period was 85.7 days and the median was 91 days. On the other hand, the average "lateness" of the payments during the preference period was 134 days and the median was 135 days. During the preference period the payments were made for much older invoices (average of 135 days late) . . . but prior to the preference period the payments were considerably closer to the invoice being paid (average of 85.7 days late) . . . .

Id.

Based on this scumbled record, and given Tres Monjitas' deficient analysis below, it cannot be said that the above methodology and factual findings, which Tres Monjitas never impugned, were clearly erroneous. And based on these findings, the bankruptcy court permissibly reached its alternative determination that the transfers during the preference period were unusually late, and thus fell outside of the ordinary course of business between Tres Monjitas and PMC. Cf. In re Gateway Pac. Corp., 153 F.3d 915, 918 (8th Cir. 1998) (challenged payments not ordinary when there is a 19-day difference between payment time during historical and preference periods); In re CIS Corp., 214 B.R. 108, 120-21 (Bankr. S.D.N.Y. 1997) (payments not ordinary when made an average of 80 days after invoice date, as compared with historic practice of paying invoices approximately 51 days late); In re Parkview Hosp. Osteopathic Med. Ctr., 181 F.3d 103, **2-3 (6th Cir. 1999) (per curiam) (unpublished table decision) (similar). To say more on this matter would be pointless.

**Conclusion**

For the reasons stated, the bankruptcy court's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of March, 2015.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge